**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| INTERCURRENCY SOFTWARE LLC, | |
| *Plaintiff*, | **Case No. 2:23 Civ. 370 [JRG]** (Lead Case) |
| v. | **Jury Trial Demanded** |
| BINANCE HOLDINGS LIMITED, | |
| *Defendant*. | |

**DEFENDANT BINANCE HOLDINGS LIMITED'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page(s)**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ...................................................................................................................... 4

**APPLICABLE LEGAL STANDARDS** ..................................................................................... 5

**ARGUMENT** ............................................................................................................................ 7

**I.    THE ASSERTED PATENTS ARE INELIGIBLE UNDER SECTION 101** ................... 7

    **A.    Claim 1 of the '107 Patent Is Representative** ................................................................. 7

    **B.    The Asserted Patents Are Ineligible Under Section 101 Precedent** ............................. 9

    **C.    *Alice* Step One: The Asserted Patents Are Directed to an Abstract Idea** ................... 12

    **D.    *Alice* Step Two: The Asserted Patents Lack an Inventive Concept** ........................... 13

**II.    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE INFRINGEMENT** .............. 15

**III.   THERE ARE NO ALLEGATIONS OF INFRINGEMENT BY BHL** ......................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A. Stucki Co.* v. *Worthington Inds., Inc.,* 849 F.2d 593 (Fed. Cir. 1988) ..................................... 19

*Alice Corp. Pty Ltd* v. *CLS Bank International*, 573 U.S. 208 (2014) .................................. *passim*

*Alvao Digital* v. *AXS Group*, No. 23 Civ. 68, ECF No. 1 (N.D. Tex. Jan. 10, 2023)................... 14

*Amdocs (Israel) Ltd.* v. *Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) ........................... 9

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009)................................................................................. 6, 16, 19

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007).............................................................. 6, 16

*Bilski* v. *Kappos*, 561 U.S. 593 (2010) ................................................................................................ 2

*Bot M8 LLC* v. *Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ......................................... 15, 16

*Bozeman Financial LLC* v. *Federal Reserve Bank of Atlanta*, 955 F.3d 971 (Fed. Cir. 2020).... 12

*Chapterhouse, LLC* v. *Shopify, Inc.*, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018).............. 6, 18

*Clark* v. *Thompson*, 850 F. App'x 203 (5th Cir. 2021) ......................................................... 16, 18

*Content Extraction & Transmission LLC* v. *Wells Fargo Bank, National. Association*, 776 F.3d 1343 (Fed. Cir. 2014).................................................................................................................... 8

*CyberSource Corp.* v. *Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ........................... 12

*Decapolis Sys., LLC* v. *Cima Healthcare Management*, No. 22 Civ. 453, Dkt. No. 1 (E.D. Tex. Nov. 22, 2022) ............................................................................................................................. 14

*Dropbox, Inc.* v. *Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) ................. 15

*Enfish, LLC* v. *Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) .................................................. 9

*GREE, Inc.* v. *Supercell Oy*, 2020 WL 475443 (E.D. Tex. Jan. 29, 2020)..................................... 8

*Health Discovery Corp.* v. *Intel Corp.*, 577 F. Supp. 3d 570 (W.D. Tex. 2021)............................ 9

*Implicit, LLC* v. *NetScout Sys., Inc.*, 2019 WL 127115 (E.D. Tex. Jan. 8, 2019) ........................ 19

*Integrated Technological Systems, Inc.* v. *First Internet Bank of Indiana*, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017).................................................................................................................... 9

*Intellectual Ventures I LLC* v. *Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).......... 14

*Intercurrency Software LLC* v. *Aux Cayes FinTech Co. Ltd.,* No. 24 Civ. 117 (E.D. Tex. Feb 20, 2024) ................................................................................................................................... 17

*Intercurrency Software LLC* v. *Blockchain (Gb) Ltd*, No. 23 Civ. 00369 (E.D. Tex. Aug. 16, 2023) ......................................................................................................................................... 17

*Intercurrency Software LLC* v. *Bybit Fintech Limited*, No. 24 Civ. 118 (E.D. Tex. Feb 20, 2024) ........................................................................................................................................... 17

*Intercurrency Software LLC* v. *Charles Schwab & Co., Inc.*, No. 23 Civ. 00128 (E.D. Tex. Mar. 27, 2023) ..................................................................................................................................... 17

*Intercurrency Software LLC* v. *eToro Group Ltd.,* No. 24 Civ. 116 (E.D. Tex. Feb 20, 2024)... 17

*Intercurrency Software LLC* v. *Fidelity Brokerage Services LLC*, No. 23 Civ. 00080 (E.D. Tex. Feb. 28, 2023) ............................................................................................................................. 17

*Intercurrency Software LLC* v. *Foris DAX Asia Pte. Ltd.*, No. 23 Civ. 00361 (E.D. Tex. Aug. 4, 2023) ......................................................................................................................................... 17

*Intercurrency Software LLC* v. *GBM Foundation Company Ltd.*, No. 23 Civ. 00395 (E.D. Tex. Aug. 31, 2023) ............................................................................................................................. 17

*Intercurrency Software LLC* v. *Huobi Global Limited*, No. 24 Civ. 119 (E.D. Tex. Feb 20, 2024) ................................................................................................................................................... 17

*Intercurrency Software LLC* v. *IG Group*, No. 23 Civ. 00234 (E.D. Tex. May 26, 2023) .......... 17

*Intercurrency Software LLC* v. *MEK Global Limited*, No. 23 Civ. 00394 (E.D. Tex. Aug. 31, 2023) ......................................................................................................................................... 17

*Intercurrency Software LLC* v. *Morgan Stanley & Co. LLC*, No. 23 Civ. 00130 (E.D. Tex. Mar. 28, 2023) ..................................................................................................................................... 17

*Intercurrency Software LLC* v. *Robinhood Crypto, LLC*, No. 23 Civ. 00360 (E.D. Tex. Aug. 4, 2023) ......................................................................................................................................... 17

*Intercurrency Software LLC* v. *State Street Bank and Trust Co*., No. 24 Civ. 0079 (E.D. Tex. Feb. 6, 2024) ............................................................................................................................... 17

*Intercurrency Software LLC* v. *TD AMERITRADE, Inc.*, No. 23 Civ. 00196 (E.D. Tex. May 2, 2023) ......................................................................................................................................... 17

*Island Intellectual Property LLC* v. *TD Ameritrade, Inc.*, 2022 WL 17080738 (E.D. Tex. Nov. 17, 2022) ................................................................................................................................ 6, 13

*Loyalty Conversion Systems Corp.* v. *America Airlines, Inc.*, 66 F. Supp. 3d 829 (E.D. Tex. 2014) .............................................................................................................................. 9, 11, 12, 13

iv

*Mad Dogg Athletics, Inc.* v. *Peloton Interactive, Inc.*, 2021 WL 4206175 (E.D. Tex. Sept. 15, 2021) .............................................................................................................................. 6, 8, 14

*Metacluster LT, UAB* v. *Bright Data Ltd.*, 2022 WL 18859434 (E.D. Tex. Dec. 20, 2022).......... 5

*Miller Mendel, Inc.* v. *City of Anna, Texas*, 598 F. Supp. 3d 486 (E.D. Tex. 2022) ........ 12, 13, 14

*Ochoa* v. *Texas Metal Trades Council*, 989 F. Supp. 828 (S.D. Tex. 1997) ................................ 20

*PPS Data, LLC* v. *Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021 (E.D. Tex. 2019) ............. 8

*RecogniCorp LLC* v. *Nintendo Co.*, 855 F.3d 1322  (Fed. Cir. 2017)............................................ 6

*Ridgeview IP LLC* v. *Qualtrics*, LLC, No. 22 Civ. 410, Dkt. No. 8, (E.D. Tex. Nov. 28, 2022). 14

*Riggs Technology Holdings, LLC* v. *Cengage Learning, Inc.*, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) .............................................................................................................................. 12

*Sanderling Management. Ltd.* v. *Snap Inc.*, 65 F.4th 698 (Fed. Cir. 2023)...................... 13, 14, 15

*SAP America, Inc.* v. *InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018). ......................................... 6

*TIP Sys., LLC* v. *SBC Operations, Inc.*, 536 F. Supp. 2d 745 (S.D. Tex. 2008) .................... 19, 20

*Trading Technologies International, Inc.* v. *IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) ... 9, 10, 13

*Trading Technologies. International, Inc.* v. *IBG LLC*, 921 F.3d 1378 (Fed. Cir. 2019) ........ 9, 10

*U.S. ex rel. Willard* v. *Humana Health Plan of Texas Inc.*, 336 F.3d 375 (5th Cir. 2003)........... 18

*Ultramercial, Inc.* v. *Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) .................................................... 7

*Vervain, LLC* v. *Micron Tech., Inc.*, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022).................... 15, 16

**Statutes**

35 U.S.C. § 101..................................................................................................................... *passim*

Defendant Binance Holdings Limited ("BHL") respectfully moves to dismiss the putative patent infringement Complaint (the "Complaint") filed by Plaintiff Intercurrency Software LLC ("Plaintiff") for failure to state a viable claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) the alleged patents[1] upon which Plaintiff sues (collectively, the "Asserted Patents") are ineligible for protection under Section 101 of the Patent Act, (2) Plaintiff has failed to plausibly allege any infringement of the Asserted Patents, and (3) Plaintiff has based its infringement allegations against BHL on actions of a separate and distinct company, called BAM Trading Services Inc. ("BAM"), that is not a party to this case.[2]

## PRELIMINARY STATEMENT

Plaintiff is a non-practicing entity that acquired the Asserted Patents to produce infringement lawsuits. To date, Plaintiff has filed 16 boilerplate complaints in the Eastern District of Texas—each of which copies and pastes virtually identical patent infringement allegations against different financial trading intermediaries like Morgan Stanley, Fidelity Brokerage Services, and Charles Schwab—with the apparent goal of leveraging the costs of defending such nuisance suits to induce settlements.

In this case, Plaintiff's Complaint is fatally flawed because the Asserted Patents on which Plaintiff sues are invalid, the Complaint fails to plausibly allege any infringement of the Asserted Patents, and the Complaint's infringement allegations against BHL are based on the actions of a different company (BAM) that is not a party to this case. The Complaint should be dismissed with prejudice.

---

[1] U.S. Patent Nos. 10,062,107 (the "'107 Patent"); 10,776,863 (the "'863 Patent"); and 11,449,930 (the "'930 Patent").

[2] Unless otherwise indicated, all emphasis is added and internal quotation marks, brackets, and citations are omitted.

*First*, the Asserted Patents are ineligible for protection under Section 101 of the Patent Act. The Asserted Patents are directed to the fundamental economic practice of using the Internet to engage in electronic trading of a financial asset whose market price is based on a constantly updated currency exchange rate.  They purport to give the holder of the Asserted Patents the exclusive right to use asset trading platforms that display "dynamically chang[ing]" exchange rates between two currencies—a feature which allows traders to conduct transactions in their preferred currency with real-time access to prevailing exchange rates.  Such commonplace business methods fall squarely within the class of generic, abstract, uninventive concepts that the Supreme Court determined to be ineligible for patent protection under Section 101 in *Alice Corp. Pty Ltd.* v. *CLS Bank Int'l*, 573 U.S. 208 (2014) ("*Alice*").

Under the *Alice* test for determining Section 101 patent eligibility, the Asserted Patents fail both prongs of the test—and are thus ineligible for Patent Act protection—because the Asserted Patents (1) are directed at the abstract idea of conducting transactions in a preferred currency, and (2) lack an inventive concept.  Far from being inventive, the Asserted Patents merely increase the speed and efficiency of that abstract idea through the generic use of a computer.

The Supreme Court has held that fundamental economic concepts taught in introductory finance class—like intermediated settlement or hedging—cannot be patented just because someone finds a new way to implement them by computer.  *See Alice* (intermediated settlement); *Bilski* v. *Kappos*, 561 U.S. 593 (2010) (hedging).  The same is true of the very basic idea that the Asserted Patents seek to monopolize—using a computer to display dynamically fluctuating currency exchange rates.

*Second*, Plaintiff fails to adequately allege any infringement of the Asserted Patents.  As an initial matter, the Complaint nowhere alleges that BHL has infringed the "dynamically

2

changed" limitation required by every claim of the Asserted Patents.  All of the Asserted Patents' claims were amended to incorporate this limitation as a condition of issuance by the U.S. Patent and Trademark Office ("Patent Office").  Despite this being the Asserted Patents' alleged "point of novelty"—which must be specifically pled under well-established law—Plaintiff's assembly-line Complaint does not even mention this limitation.  Moreover, the Complaint is comprised almost exclusively of rote assertions copied from 15 other complaints against prominent asset trading platforms, along with two screenshots from the website of the domestic digital asset trading platform BAM (doing business as "Binance.us") with no meaningful discussion of how the sole defendant in this suit—the offshore company BHL—supposedly infringed the Asserted Patents. Such conclusory rinse-and-repeat allegations are insufficient as a matter of law to withstand dismissal.

*Finally*, the Complaint bases its infringement allegations against BHL on the actions of a separate company (BAM) that is not a party to this case.  The Complaint alleges that BAM (d/b/a "Binance.us") infringed the Asserted Patents with no assertions linking that domestic cryptocurrency exchange to the sole defendant, BHL.  As Plaintiff's own allegations demonstrate, BHL is separate and distinct from the domestic company BAM, which operates the domestic cryptocurrency exchange "Binance.us" for domestic customers.  The Complaint's only gesture at tying BHL to the claimed wrongdoing—consisting of conclusory allegations that BHL "controls" BAM—are insufficient to hold BHL liable for any purported misconduct by BAM.  Since the Complaint contains no allegations—conclusory or otherwise—that BHL engaged in any infringement, the Complaint against BHL must be dismissed.

For these reasons and those that follow, the Complaint should be dismissed with prejudice.

## BACKGROUND

### *The Asserted Patents*

The Asserted Patents purport to cover methods for using consolidated asset trading platforms that display dynamically changing exchange rates between two currencies, thus allowing users to trade assets in their preferred currency with real-time access to prevailing exchange rates. ('107 Patent at 8:45-9:4).[3]

Plaintiff concedes that before the Asserted Patents, it was common to trade assets in different currencies "via the Internet." (*Id.* at 1:15-20).  For example, the Asserted Patents acknowledge that the prior art included trading platforms that allowed "investors residing in China" to trade "US securities from their accounts at Charles Schwab via the Internet," and then convert those trades from "US dollars" to their "local currency." (*Id*. at 1:34-47).  But because there was a time lag between the stock trade and the currency conversion, "the investor had no certain knowledge of what profit or loss he was going to get," since the "currency exchange rate . . . may fluctuate significantly enough to affect the ultimate profit or loss." (*Id*. at 1:53-60).

The Asserted Patents purport to solve this problem by "displaying all costs and fees in the preferred currency," and "dynamically chang[ing]" those costs and fees to reflect the "prevailing exchange rate." (*Id*. at 8:64-9:4).  According to Plaintiff, this gives the trader "certain knowledge of what to pay for the asset," and the trader's exact "profit or loss when acting on the asset." (*Id*. at 9:2-4).

Application No. 11/736,583—which issued as the '107 patent and is the earliest priority document for all the Asserted Patents—was rejected numerous times by the Patent Office on

---

[3] All three Asserted Patents share a common specification.  For convenience's sake, BHL cites to the page and line numbers of the specification of the '107 Patent, which is identical in all relevant respects to the specifications of the other Asserted Patents.

eligibility grounds, but was ultimately granted when the patentee amended the claims to specify that the trading platform would display "***dynamically chang[ing]***" costs and fees to buy or sell an asset in a trader's preferred currency "in accordance with the prevailing exchange rate updated constantly even when a market value of the asset remains unchanged," such that the "trader has certain knowledge of what to pay for the asset, or profit or loss when acting on the asset." (Ex. A (Notice of Allowance, '107 Patent); Ex. B (Notice of Allowance, '930 Patent); Ex. C (Notice of Allowance, '836 Patent)).[4]  It was only after the patentee amended the claims to include this "***dynamically changed***" limitation that the Asserted Patents were allowed.

### *Plaintiff's Patent Infringement Allegations*

Plaintiff is the assignee of the Asserted Patents, and claims no corporate operations or purpose other than owning the Asserted Patents.  (*See* Compl. ¶¶ 9-10).  Plaintiff's Complaint contains two screenshots from the website of Binance.us—a domestic digital asset trading platform operated by BAM for domestic customers (*id.* ¶¶ 2-4)—purporting to show real-time exchange rates between Bitcoin and the U.S. dollar (*id.* ¶¶ 30, 35).  Based on these screenshots of Binance.us's website, Plaintiff alleges that BHL—a separate legal entity incorporated offshore—has infringed the Asserted Patents.  (*Id.* ¶¶ 2-4, 30, 35).

### APPLICABLE LEGAL STANDARDS

### *Patent Eligibility*

To determine whether a patent is entitled to protection under Section 101 of the Patent Act, this Court must apply the two-part test articulated by the Supreme Court in *Alice*.  Step one requires

---

[4] "Communications before the Patent and Trademark Office that are matters of public record are subject to judicial notice and appropriate for this Court to consider at the pleading stage." *Metacluster LT, UAB* v. *Bright Data Ltd.*, 2022 WL 18859434, at \*1 (E.D. Tex. Dec. 20, 2022), *report and recommendation adopted*, 2023 WL 416417 (E.D. Tex. Jan. 25, 2023).

this Court to determine whether Plaintiff's claims are "directed to a specific means or method for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp LLC* v. *Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).  At step two, the Court must determine whether the claims contain an "inventive concept—*i.e.*, an element or combination of elements" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *The Island Intellectual Property LLC* v. *TD Ameritrade, Inc.*, 2022 WL 17080738, at \*1-2 (E.D. Tex. Nov. 17, 2022) (Gilstrap, J.).  If the Court determines that the patent is "directed to an abstract idea" and lacks "an inventive concept," the patent is invalid.

### *Sufficiency of the Pleadings*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *accord Chapterhouse, LLC* v. *Shopify, Inc.*, 2018 WL 6981828, at \*1 (E.D. Tex. Dec. 11, 2018) (Gilstrap, J.).  The factual allegations must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements, and the Court must ignore legal conclusions, even when they are "couched as a factual allegation." *Iqbal*, 556 U.S. 678, 678; *accord Mad Dogg Athletics, Inc.* v. *Peloton Interactive, Inc.*, 2021 WL 4206175, at \*2 (E.D. Tex. Sept. 15, 2021) (Gilstrap, J.).  Patent ineligibility is a threshold issue that "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion to dismiss. *SAP America, Inc.* v. *InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

## ARGUMENT

## I.   THE ASSERTED PATENTS ARE INELIGIBLE UNDER SECTION 101

This is precisely the type of nuisance infringement lawsuit that the Federal Circuit had in mind when it reaffirmed in *Ultramercial, Inc.* v. *Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) that Section 101 of the Patent Act should be invoked at the motion-to-dismiss stage to weed out invalid patents. As Federal Circuit Court Judge Mayer wrote in *Ultramercial*, a "scourge of meritless infringement claims has continued unabated for decades due, in no small measure, to the ease of asserting such claims and the enormous sums required to defend against them." *Id.* at 719 (Mayer, J., concurring). Judge Mayer noted that such cases are typically brought by non-practicing entities that, like Plaintiff here, "own vague and overbroad business method patents," file "nearly identical patent infringement complaints against a plethora of diverse defendants," and then demand "a quick settlement at a price far lower than the cost to defend the litigation." *Id.* Acknowledging the prevalence of such strike suits, Judge Mayer rightly observed that "[a]ddressing section 101 at the threshold will thwart attempts—some of which bear the indicia of extortion—to extract nuisance value settlements from accused infringers." *Id.*

The Asserted Patents on which Plaintiff sues fit squarely within this framework, and should be deemed invalid under Section 101.

### A.  Claim 1 of the '107 Patent Is Representative

Claim 1 of the '107 Patent is representative of all of the Asserted Patents' claims.[5] Accordingly, a determination that Claim 1 of the '107 Patent is ineligible under Section 101 of the Patent Act should apply with equal force to all of the Asserted Patent claims.

---

[5] Plaintiff alleges that BHL has infringed Claim 1 of the '107 Patent, Claim 1 of the '863 Patent, and Claim 12 of the '930 Patent.  (*See* Compl. ¶¶ 35, 51, 67).

To establish representativeness, a defendant must first offer "a substantial rationale for treating a claim as representative of other asserted claims." *GREE, Inc.* v. *Supercell Oy*, 2020 WL 475443, at \*1 (E.D. Tex. Jan. 29, 2020) (Gilstrap, J.) (quoting *PPS Data, LLC* v. *Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1030 (E.D. Tex. 2019)).  If the defendant does so, the burden then "shifts to the plaintiff to identify limitations that are present in the asserted claims but that are not represented by the allegedly representative claim." *Id.* at \*2 (quoting *PPS Data*, 404 F. Supp. 3d at 1031-32).

Here, all of the asserted claims are "substantially similar and linked to the same abstract idea"—namely, conducting transactions in a preferred currency.  *See Mad Dogg*, 2021 WL 4206175, at \*4 (quoting *Content Extraction & Transmission LLC* v. *Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).  Moreover, the Asserted Patents are all subject to a terminal disclaimer, share a common specification, and include significantly overlapping claim language. In *PPS Data*, this Court found that the "cumulative effect of these three justifications" was sufficient to meet the defendant's "burden to initially show representativeness."  404 F. Supp. 3d 1021, 1034-36 (E.D. Tex. 2019).  The same is true here.

In addition, Plaintiff cannot meet its burden of distinguishing the claims.  In the Complaint, Plaintiff offers only a single conclusory allegation that "[n]o single claim is representative of any other[,]" with no factual support.  (*See* Compl. ¶ 13).  Such labels and legal conclusions are insufficient to distinguish the claims and must be disregarded.  *See, e.g.*, *Mad Dogg*, 2021 WL 4206175, at \*2 (noting that the Court "is not required to accept the plaintiff's legal conclusions as true" on a motion to dismiss).  Moreover, in describing the purported "inventions" of the Asserted Patents, the Complaint cites only the '107 Patent and offers only a single description of the supposed inventions as to all three Asserted Patents, confirming the conclusion that Claim 1 of the

'107 Patent is representative of the asserted claims of all three Asserted Patents.  (*See* Compl. ¶¶ 17-20).

For all of these reasons, the Court should treat Claim 1 of the '107 Patent as representative.

**B.  The Asserted Patents Are Ineligible Under Section 101 Precedent**

A step-by-step application of the *Alice* test is unnecessary when, as is the case here, courts have found analogous patents to be ineligible.  *See Amdocs (Israel) Ltd.* v. *Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) ("[T]he decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided."); *Enfish, LLC* v. *Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("[B]oth this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."); *Health Discovery Corp.* v. *Intel Corp.*, 577 F. Supp. 3d 570, 584 (W.D. Tex. 2021) ("[A] district court's surest guidance rises from cases analyzing patents most like those under review."); *Integrated Technological Systems, Inc.* v. *First Internet Bank of Indiana*, 2017 WL 631195, at \*5 (E.D. Tex. Jan. 30, 2017) (noting that a full analysis "is not necessary to decide *Alice* Step One when the claims can adequately be compared to claims declared abstract in past cases"), *report and recommendation adopted*, 2017 WL 617673 (E.D. Tex. Feb. 15, 2017), *aff'd*, 712 F. App'x 1007 (Fed. Cir. 2018).

Here, three recent decisions—two from the Federal Circuit and one from this Court—are dispositive, since all three cases invalidated patents with strikingly similar claims to those in the Asserted Patents.  *See Trading Technologies International, Inc.* v. *IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) ("*Trading Techs. I*"); *Trading Technologies. International, Inc.* v. *IBG LLC*, 921 F.3d

1378 (Fed. Cir. 2019) ("*Trading Techs. II*"); *Loyalty Conversion Systems Corp.* v. *America Airlines, Inc.*, 66 F. Supp. 3d 829 (E.D. Tex. 2014) ("*Loyalty*").

In *Trading Techs. I*, the Federal Circuit considered three patents related "to a graphical user interface" for "electronic trading" that provided traders with real-time market color. 921 F.3d at 1087. Under *Alice* step one, the Circuit concluded that the patents were "directed to the abstract idea of graphing (or displaying) bids and offers to assist a trader to make an order[,]" because, "[a]s a general rule, the collection, organization, and display of two sets of information on a generic display device is abstract." *Id.* at 1092-93. Under *Alice* step two, the Circuit found that the claims lacked an inventive concept, because although the claims involved a "computer-based method[,]" they "d[id] not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Id.* at 1093.

*Trading Techs. II* is similar. In that case, the Federal Circuit considered a patent related to "displaying market information on a screen[,]" such as "bids and offers in association with price values along an axis." 921 F.3d at 1381. At *Alice* step one, the Circuit found that "the claimed advance over the prior art [wa]s providing a trader with additional financial information to facilitate market trades, [which is] an abstract idea." *Id.* at 1384. At *Alice* step two, the Circuit concluded that the claims were "nothing more than mere automation of manual processes using generic computers, which does not constitute a patentable improvement in computer technology." *Id.* The Circuit further found that "[e]ven if no trading screen had previously displayed P&L values, a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than that ineligible concept." *Id.* at 1385.

Finally, in *Loyalty*, Federal Circuit Judge Bryson, sitting by designation in the Eastern District of Texas, evaluated two patents that allowed for "the conversion of non-negotiable credits earned from one entity into a form that can be used to purchase goods and services from another vendor"—in other words, currency exchange.  66 F. Supp. 3d at 831.  In declaring the patents invalid, Judge Bryson found that the claims were directed to "the unpatentable concept of currency exchange" and failed to "include anything that departs from the basic concept of currency conversion other than the use of computers to facilitate the conversion process and record the transactions incidental to that process."  *Id.* at 837-39.

In his analysis, Judge Bryson noted that "[p]atents of this sort have [three] features in common."  *Id.* at 845.  First, "they recite methods for performing a commonplace business function—such as currency conversion, hedging, or employing intermediated settlement in a financial transaction—typically by using a computer system or computer components to perform those methods."  *Id.*  Second, "they are aspirational in nature in that they describe the business function, but do not describe any novel manner of performing that function other than referring to the use of routine operations performed by a specially programmed computer."  *Id.*  Finally, "the recitations referring to the use of a computer do not include any inventive measure that purport[s] to improve the functioning of the computer itself."  *Id.*

Here, all three of these features apply to the Asserted Patents, which purport to cover computer systems for trading assets with a preferred currency that display dynamically changing currency exchange rates, with no discussion of any "novel manner of performing that function," or "inventive measure" that would "improve the functioning of the computer itself."  *Id.*

This Court need not reinvent the wheel.  Just as in *Trading Techs. I*, *Trading Techs. II*, and *Loyalty*, the Asserted Patents are related to an abstract idea and utilize standard technology without

any improvement or inventive concept.  These precedents compel a finding that the Asserted Patents are ineligible for Section 101 protection as a matter of law.

### C.  *Alice* **Step One: The Asserted Patents Are Directed to an Abstract Idea**

Even if this Court were to conduct a full-blown *Alice* analysis, the Asserted Patents would still fail because a basic economic practice like conducting transactions in a preferred currency is a paradigmatic "abstract idea."  *See, e.g.*, *Alice*, 573 U.S. at 219 (noting that "fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class" is "patent-ineligible"); *Bozeman Financial LLC* v. *Federal Reserve Bank of Atlanta*, 955 F.3d 971, 978 (Fed. Cir. 2020) (same); *see also Loyalty*, 66 F. Supp. 3d at 837 (listing patent-ineligible abstract ideas, including "currency exchange").

This is so because claims "directed to steps that can be performed in the human mind, or by a human using a pen and paper" are by definition abstract and patent-ineligible.  *Riggs Technology Holdings, LLC* v. *Cengage Learning, Inc.*, 2023 WL 193162, at \*2 (Fed. Cir. Jan. 17, 2023); *see also CyberSource Corp.* v. *Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("Methods which can be performed entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed entirely in the human mind are the types of methods that embody the basic tools of scientific and technological work that are free to all men and reserved exclusively to none.").

Here, although calculating currency exchange rates might be difficult and time consuming, it is undeniable that these calculations can be done by hand or within the human mind—have been done accordingly since long before the Asserted Patents' date of invention in 2007—and are thus "abstract."  *See Miller Mendel, Inc.* v. *City of Anna, Texas*, 598 F. Supp. 3d 486, 495 (E.D. Tex.

2022) (Gilstrap, J.) (finding a claim to be abstract because although "[a] pen and paper version of the claimed method would not be particularly efficient," it "could be completed").

### D.  *Alice* **Step Two: The Asserted Patents Lack an Inventive Concept**

The Asserted Patents also fail *Alice* step two because they lack an inventive concept.  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *Sanderling Management. Ltd.* v. *Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023).  To carry out the abstract idea of conducting transactions in a preferred currency, the claims of the Asserted Patents rely solely on conventional computer hardware, such as computers and servers.  Courts routinely find such allegations insufficient, since the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223; *see also Island Intellectual Property*, 2022 WL 17080738, at *2 ("[G]eneric computer components [are] insufficient to add an inventive concept to an otherwise abstract idea."); *Miller Mendel*, 598 F. Supp. 3d at 498 ("The computer and internet technologies described in the [patent at issue] are generic, and requiring the use of generic computer technology does not create an inventive concept.").

Notably, the claims do not purport to "improve the functioning of the computer, make it operate more efficiently, or solve any technological problem[,]" but instead claim to make "the trader"—"not the computer"—"faster and more efficient," which is precisely what the Federal Circuit rejected in *Trading Techs. I.*  921 F.3d at 1090, 1093; *see also Loyalty*, 66 F. Supp. 3d at 846 ("Nothing in the patents describes or claims an advance in computer technology that makes the performance of those functions more effective.").

13

That the Asserted Patents integrate a computer to allow for "costs and fees [to be] dynamically changed [and] the prevailing exchange rate [to be] updated constantly" does not change this conclusion.  (Ex. A).  Federal Circuit "precedent is clear that merely adding computer functionality to increase the speed or efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea."  *Intellectual Ventures I LLC* v. *Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015); *see also Sanderling Management*, 65 F.4th at 705 ("[Plaintiff]'s contention that the claims improve 'scalability and speed' is unavailing; even if true, claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."); *Miller Mendel*, 598 F. Supp. 3d at 498 ("[P]urported improvement over the prior art is the alleged efficiency of the method through computerization, which is not enough to confer patent eligibility.").  Here, the claims of the Asserted Patents do exactly that—attempt to transform an abstract idea (conducting transactions in a preferred currency) by claiming that the abstract idea can be done faster and more efficiently with the help of a generic computer.  Such allegations fail under *Alice*.

Recognizing these dispositive shortcomings in the Complaint, Plaintiff claims that "[e]ven if a court ruled the underlying aspects to be abstract, the inventive concepts disclosed in sufficient detail would transform the claims into patent-eligible subject matter."  (Compl. ¶ 23).  But Plaintiff fails to elaborate on this threadbare assertion, and pleads no allegations—conclusory or otherwise—to support it.  Moreover, Plaintiff's counsel has used this exact language in unrelated complaints against other defendants involving different patents, underscoring the boilerplate nature of the assertion in particular and of this action as a whole.  *See, e.g.*, *Alvao Digital* v. *AXS Group*, No. 23 Civ. 68, ECF No. 1, ¶ 27 (N.D. Tex. Jan. 10, 2023) (same paragraph); *Decapolis Sys., LLC* v. *Cima Healthcare Management*, No. 22 Civ. 453, Dkt. No. 1, ¶ 24 (E.D. Tex. Nov.

22, 2022) (same); *Ridgeview IP LLC* v. *Qualtrics*, LLC, No. 22 Civ. 410, Dkt. No. 8, ¶ 22 (E.D. Tex. Nov. 28, 2022) (same).  More is required to withstand dismissal.  *See Mad Dogg*, 2021 WL 4206175, at *6 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Dropbox, Inc.* v. *Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) ("These pleadings provide no more than a series of legal conclusion[s] about the § 101 analysis.  When considering a motion to dismiss, courts must take all the factual allegations in the complaint as true—but are not bound to accept as true a legal conclusion couched as a factual allegation.").[6]

## II.     THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE INFRINGEMENT

The Complaint should also be dismissed because it fails to adequately allege any infringement of the Asserted Patents.

As an initial matter, the Complaint fails to allege that BHL has infringed the "dynamically changed" limitation required by each claim of the Asserted Patents.  This alone is fatal to Plaintiff's infringement claims.

A "plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC* v. *Sony Corp. of America*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Id.*  A "higher level of detail in pleading infringement"

---

[6] Claim construction is unnecessary to resolve this motion, since "[c]laim construction is not an inviolable prerequisite to a validity determination under § 101," and if "claims are directed to ineligible (or eligible) subject matter under all plausible constructions, then the court need not engage in claim construction before resolving a Section 101 motion."  *Sanderling*, 65 F.4th at 704 (Fed. Cir. 2023).  Here, the asserted patents are not patent eligible under any conceivable construction of their claim terms.

may be "demanded for elements clearly material to novelty and non-obviousness" because a "plaintiff cannot establish why it is plausible that the accused product infringes the patent claim" by "merely articulating why it is plausible that the accused product practices the prior art." *Vervain, LLC* v. *Micron Tech., Inc.*, 2022 WL 23469, at \*5 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8*, 4 F.4th at 1353). "Pleading only the latter begs the obvious alternative explanation that the accused infringer is merely practicing the prior art." *Id.* (quoting *Twombly*, 550 U.S. at 567).

Plaintiff's Complaint lacks any allegation that BHL performs the specific claim limitations that the Patent Office relied on to issue the Asserted Patents, including the critical "dynamically changed" limitation described above. For example, the Complaint nowhere alleges that BHL allows "costs and fees [to be] ***dynamically changed*** [and] the prevailing exchange rate [to be] ***updated constantly***" ('107 Patent at 8:64-9:4), even though Plaintiff alleges that this "dynamically changed" limitation provided the inventive concept that made the Asserted Patents patent-eligible. Indeed, the words "dynamic" and "constant" are not even mentioned in the Complaint.

The absence of any allegation that BHL practices the "dynamically changed" limitation is fatal given the Federal Circuit's directive that the Complaint must "articulate why it is plausible that the accused product infringes the patent claim" (*Bot M8*, 4 F.4th at 1353), because this limitation captures the alleged "novelty" of the Asserted Patents (*Vervain*, 2022 WL 23469, at \*5). *Accord id.* ("a complaint nakedly alleging that the accused product practices the claimed invention's point of novelty will rarely suffice" to state a claim).

The Complaint's infringement allegations should also be dismissed on the independent ground that they are too rote and conclusory to state a plausible claim that BHL is infringing. Pleadings consisting of "boilerplate accusations devoid of any factual specificity" must be dismissed. *Clark* v. *Thompson*, 850 F. App'x 203, 205 (5th Cir. 2021); *see also Iqbal*, 556 U.S. at

678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  This is especially true in this case, in which the Plaintiff is a non-practicing entity that acquired the Asserted Patents by assignments to produce infringement lawsuits and has apparently copied and pasted the same set of allegations from 15 other complaints filed against different defendants.[7]

A common theme across those assembly-line complaints is that Plaintiff fails to allege defendant-specific acts of infringement.  Indeed, in this case, none of the Complaint's infringement allegations are specific to the only named defendant, BHL.  Instead, the Complaint's infringement claims boil down to (1) assertions that a different company, BAM, does business as Binance.us, (2) screenshots of Binance.us's website, and (3) conclusory assertions, made upon "information and belief," that Binance.us has infringed the Asserted Patents.  (*See* Compl. ¶¶ 2-4, 30, 35).  At the outset, those allegations target BAM, which is not a party to this case, rather than BHL, the only defendant.  As shown below, the Complaint fails to allege facts making a plausible showing that the sole defendant in this case—the foreign corporation BHL—is responsible for any claimed

---

[7] *See Intercurrency Software LLC* v. *Fidelity Brokerage Services LLC*, No. 23 Civ. 00080 (E.D. Tex. Feb. 28, 2023); *Intercurrency Software LLC* v. *Charles Schwab & Co., Inc.*, No. 23 Civ. 00128 (E.D. Tex. Mar. 27, 2023); *Intercurrency Software LLC* v. *Morgan Stanley & Co. LLC*, No. 23 Civ. 00130 (E.D. Tex. Mar. 28, 2023); *Intercurrency Software LLC* v. *TD AMERITRADE, Inc.*, No. 23 Civ. 00196 (E.D. Tex. May 2, 2023); *Intercurrency Software LLC* v. *IG Group*, No. 23 Civ. 00234 (E.D. Tex. May 26, 2023); *Intercurrency Software LLC* v. *Robinhood Crypto, LLC*, No. 23 Civ. 00360 (E.D. Tex. Aug. 4, 2023); *Intercurrency Software LLC* v. *Foris DAX Asia Pte. Ltd.*, No. 23 Civ. 00361 (E.D. Tex. Aug. 4, 2023); *Intercurrency Software LLC* v. *Blockchain (Gb) Ltd*, No. 23 Civ. 00369 (E.D. Tex. Aug. 16, 2023); *Intercurrency Software LLC* v. *MEK Global Limited*, No. 23 Civ. 00394 (E.D. Tex. Aug. 31, 2023); *Intercurrency Software LLC* v. *GBM Foundation Company Ltd.*, No. 23 Civ. 00395 (E.D. Tex. Aug. 31, 2023); *Intercurrency Software LLC* v. *State Street Bank and Trust Co*., No. 24 Civ. 0079 (E.D. Tex. Feb. 6, 2024); *Intercurrency Software LLC* v. *eToro Group Ltd.,* No. 24 Civ. 116 (E.D. Tex. Feb 20, 2024); *Intercurrency Software LLC* v. *Aux Cayes FinTech Co. Ltd.,* No. 24 Civ. 117 (E.D. Tex. Feb 20, 2024); *Intercurrency Software LLC* v. *Bybit Fintech Limited*, No. 24 Civ. 118 (E.D. Tex. Feb 20, 2024); *Intercurrency Software LLC* v. *Huobi Global Limited*, No. 24 Civ. 119 (E.D. Tex. Feb 20, 2024).

wrongdoing by the domestic company BAM (d/b/a Binance.us).  In any event, the Complaint's speculative "information and belief" allegations against Binance.us lack any "factual specificity" explaining how the screenshots of Binance.us's website are proof of conduct that treads on the Asserted Patents, and thus fall woefully short of pleading plausible infringement claims.  *Clark*, 850 F. App'x at 205; *see also Chapterhouse*, 2018 WL 6981828, at *2 ("While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.").

## III.    THERE ARE NO ALLEGATIONS OF INFRINGEMENT BY BHL

Even if the Complaint adequately alleged acts of infringement, the Complaint would still fail because its infringement claims are all based on conduct of BAM (d/b/a Binance.us), which is not a party to this case.  It is beyond dispute that while the domestic corporation BAM and foreign corporation BHL are each at least partially owned by the same individual, they are separate entities with distinct operations and purposes.

Plaintiff's own Complaint makes this clear.  According to the Complaint's allegations and materials cited in it, BAM is a domestic corporation which operates the domestic cryptocurrency exchange Binance.us for domestic customers, whereas the sole defendant in this case—BHL—is a separate foreign corporation which runs the foreign digital asset trading platform Binance.com for foreign customers.  (Compl. ¶¶ 2-4).[8]  Indeed, one of the sources cited by Plaintiff's Complaint asserts that BHL "spun off Binance.US as a separate company that now operates in 45 states"

---

[8]  On a motion to dismiss under Rule 12(b)(6), the Court can consider materials cited in the Complaint. *See, e.g.*, *U.S. ex rel. Willard* v. *Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.").

within the United States, and that "Binance [*i.e.*, BHL] and Binance.US are sister companies with distinct ownership structures."[9]

Setting aside the Complaint's conclusory assertions that BHL "controls" Binance.us (Compl. ¶ 3)—which must be disregarded as inadequate (*see Iqbal*, 556 U.S. at 681)—the Complaint alleges no facts establishing that BHL is responsible for any of the claimed wrongdoing by Binance.us.   *See Implicit, LLC* v. *NetScout Sys., Inc.*, 2019 WL 127115, at *2 (E.D. Tex. Jan. 8, 2019) (Gilstrap, J.) (dismissing vicarious liability claims as implausible where they rested solely on conclusory assertions that a corporation is "liable for the conduct of its subsidiaries, affiliates, and related entities under the doctrines of alter ego and single business enterprise").   Moreover, even if the Complaint established that BHL in fact had the general power to control Binance.us (which it does not), that still would not be sufficient to hold BHL liable for claimed acts of infringement by Binance.us absent factual allegations plausibly showing that BHL used that control to cause Binance.us to commit such infringing acts.   *See A. Stucki Co.* v. *Worthington Inds., Inc.,* 849 F.2d 593, 596 (Fed. Cir. 1988) (defendant parent corporation was not liable for alleged infringement of its subsidiary where plaintiff patent holder failed to show that the parent both (a) "had control over [the subsidiary's] actions" and (b) "could have stopped the infringement"); *TIP Sys., LLC* v. *SBC Operations, Inc.*, 536 F. Supp. 2d 745, 754-55 (S.D. Tex. 2008) ("[plaintiff patent holder] has failed to show a legal basis to pierce the corporate veil, as necessary to hold [defendant parent corporation] liable for allegedly infringing acts committed by [its subsidiary]").   The control required for one corporation to be liable under the alter-ego rule for

---

[9]  *See* Peter Butler, *Best Crypto Exchanges: Buy and Sell Bitcoin, Ether and More*, CNET MONEY (Sept. 2, 2022), https://www.cnet.com/personal-finance/investing/crypto/best-crypto-exchanges/#what-about-binance-and-binanceus (cited by Compl. ¶ 3).

the acts of another entity "amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *TIP*, 536 F. Supp. 2d at 754-55.  The Complaint is utterly devoid of the factual allegations needed to make such a showing.

Accordingly, because the Complaint fails to establish any wrongdoing by the corporate entity named as a defendant, the Complaint must be dismissed.  *Cf. Ochoa* v. *Texas Metal Trades Council*, 989 F. Supp. 828, 833 (S.D. Tex. 1997) ("It is not the Defendant's duty to inform Plaintiff as to whom he should have sued.  It is solely Plaintiff's responsibility to determine at the outset the structure of the legal entity who is responsible for his perceived wrongs.").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: March 22, 2024

Respectfully submitted,

By:     */s/ Shaun W. Hassett*

Samson A. Enzer
Gerald J. Flattmann
Andrew J. Cochran
Jason M. Ecker
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
Tel: 212-701-3000

Michael E. Jones (Bar No. 10929400)
Shaun W. Hassett (Bar No. 24074372)
POTTER MINTON PC
102 N. College Ave., Suite 900
Tyler, Texas 75702
Tel: 903-597-8311

*Counsel for Binance Holdings Limited*

20